IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SHERRY L. GARNER,**                                      Case 3:15 CV 80

      Plaintiff,

      v.                                              Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                               MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Sherry L. Garner ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny supplemental security income benefits ("SSI") for her minor child, CLL, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 13). For the reasons stated below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on behalf of CLL in July 2012, alleging disability as of August 2009. (Tr. 202-07). The claim was denied initially and on reconsideration. (Tr. 95-118). An administrative law judge ("ALJ") held a hearing in July 2013, at which Plaintiff and CLL, represented by counsel, testified. (Tr. 65-93). Following the hearing, the ALJ issued an unfavorable decision. (Tr. 15-31). The Appeals Council denied Plaintiff's request for review in November 2014, making the hearing decision the final decision of the Commissioner. (Tr. 1-6). Plaintiff filed the instant action on January 14, 2015. (Doc. 1).

## FACTUAL BACKGROUND

CLL was born on March 31, 1998, and was a fifteen-year-old child on the ALJ hearing date. (Tr. 199). She has no work history.

Educational Records

In October 2009, when CLL was in sixth grade, a team of school officials completed a reevaluation of CLL for a suspected cognitive disability. (Tr. 227-49). She had a history of receiving special education services. *Id.* Educational testing revealed results ranging from "average" to "extremely low". *Id.* The Wechsler Intelligence Scale for Children ("WISC-IV") test resulted in a full-scale IQ of 69. (Tr. 235). The team concluded CLL was eligible for continued special education and related services for her cognitive disability. (Tr. 246).

An Individualized Education Program ("IEP") meeting was held in September 2012, when CLL was in ninth grade. (Tr. 368-81). The team determined CLL qualified for special education services for her cognitive disability; she demonstrated significantly sub-average general intellectual functioning and deficits in adaptive behaviors that adversely affected her educational performance. (Tr. 291).

Also in September 2012, Tabatha Elson, an intervention specialist, completed a Teacher Questionnaire.[1] (Tr. 325-32). She opined CLL had obvious to "very serious problems" in the domain of Acquiring and Using Information; "no problems" to "very serious problems" in Attending and Completing Tasks; "no problems" to "obvious problems" Interacting and Relating With Others; "no problems" Moving About and Manipulating Objects; "no problems" to

---

1. The Teacher Questionnaire permits teachers to rate students in various functions related to each domain on a scale in the following progression: no problem; slight problem; obvious problem; serious problem; and very serious problem.

"obvious problems" in the domain of Caring for Herself. She acknowledged she had only known CLL for two months. (Tr. 325).

Ms. Elson completed another Teacher Questionnaire in April 2013. (Tr. 352-59). She noted CLL had 36 unexcused absences from school. (Tr. 352). She opined CLL had "serious" to "very serious problems" in the domain of Acquiring and Using Information; "no problems" to "very serious problems" Attending and Completing Tasks; "no problems" to "very serious problems" Interacting and Relating With Others; "slight" to "obvious problems" Moving About and Manipulating Objects; and "no problems" to "obvious problems" Caring for Herself. (Tr. 353-58).

Medical Records

CLL was removed from Plaintiff's custody in 2005 due to substantiated allegations of emotional maltreatment, neglect, physical abuse, sexual abuse, and parental substance abuse. (Tr. 458, 471, 477). While in foster care, CLL was placed on Ritalin for diagnoses of attention deficit hyperactivity disorder ("ADHD") and anxiety. (Tr. 455). After two years in foster care, CLL and her sibling were placed with relatives for approximately one year, until the relatives were no longer able to care for the children. (Tr. 458). They were then reunited with Plaintiff and her then-husband. (Tr. 458, 471, 477). Plaintiff agreed to comply with a voluntary case plan, which included a diagnostic assessment and intake evaluation of CLL. (Tr. 454-60). CLL's diagnoses included anxiety disorder and adjustment disorder with disturbance of conduct. (Tr. 459). She received a Global Assessment of Functioning ("GAF") score of 55.[2] (Tr. 459).

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic

3

A clinician performed a behavioral health assessment of CLL in March 2010. (Tr. 461-73). The clinician noted CLL was cooperative, attentive, and oriented to person, place, and time. (Tr. 462-63). She exhibited average intelligence, intact thought content, appropriate affect, and a euthymic mood. *Id.* The clinician opined CLL had "moderate-to-severe functioning difficulties" and diagnosed her with a disruptive behavior disorder and a parent-child relational problem. (Tr. 472). CLL received a GAF score of 50.[3] (Tr. 472).

In 2011 and 2012, CLL sought treatment from Mohammed Ahmed, M.D., for treatment of ADHD and depression. (Tr. 438-44). Dr. Ahmed recommended CLL undergo counseling, which CLL had stopped because it was not helping. (Tr. 444). In October 2011, CLL had improved listening, decreased aggression, and "straight A's" in school. (Tr. 443). Dr. Ahmed again recommended counseling, as Plaintiff had yet to schedule an appointment. *Id.*

CLL underwent a mental health assessment at the Children's Resource Center in August 2012, after she witnessed domestic violence between her mother and her then-stepfather. (Tr. 474-86). Plaintiff reported CLL was non-compliant, argumentative, easily distracted, fidgety, and physically and verbally aggressive. (Tr. 475, 479). CLL had been prescribed Zoloft, Focalin, and Concerta in the past, but all had been discontinued due to negative side effects. (Tr. 475). She experienced anxiety, difficulty adjusting to a new school, and difficulty getting along with her family. (Tr. 475, 479). The evaluating therapist observed a neat and clean appearance, cooperative and friendly attitude, attentiveness, intact thought content, appropriate affect, and euthymic mood. (Tr. 475-76). Clinicians diagnosed CLL with ADHD, oppositional defiant

---

attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.* at 34.

3. A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" *DSM-IV-TR*, at 34.

disorder, post-traumatic stress disorder ("PTSD"), adjustment disorder with anxiety, and parent-child relational problem. (Tr. 484). She received a GAF score of 45.[4] (Tr. 485).

CLL underwent a psychiatric consultation with psychiatrist Jeffrey Wahl, M.D., in October 2012. (Tr. 508-12). Plaintiff was mainly concerned with CLL's depression, moodiness, fidgeting, low-energy level, impaired concentration, low self-esteem, hopelessness, and anger outbursts. (Tr. 508). Dr. Wahl observed CLL had a shy and somewhat avoidant manner, somewhat anxious mood with restricted range, and relatively intact memory. (Tr. 510-11). He diagnosed her with dysthymic disorder and generalized anxiety disorder, and assigned a GAF of 45.[5] (Tr. 511). He also listed a diagnosis of mild mental retardation, but noted it was "by report". (Tr. 511).

CLL returned to Dr. Wahl in November 2012 for follow-up. (Tr. 500). She was doing well on new medication and, according to Plaintiff, doing a "remarkably good job of remembering to take the [medication] on her own." *Id.* Plaintiff described CLL as less moody, no longer aggressive, having an increased appetite, happier, and less anxious than before. *Id.* For these reasons, Dr. Wahl decided not to increase the medication dose. *Id.* He also noted CLL had no agitation or thoughts or threats of suicide. *Id.* The family cancelled a follow-up appointment in January 2013 and failed to show up for an appointment in February 2013. (Tr. 498-99).

In a March 2013 treatment noted, Dr. Wahl noted CLL's normal activity; good attention and concentration; soft and clear speech; casual and passive but cooperative appearance/demeanor; neutral and pleasant mood/affect; normal thought process; fair insight;

---

4. *See DSM-IV-TR*, *supra*, note 2.
5. *See DSM-IV-TR*, *supra*, note 2.

poor judgment; and recent, but not current, threats of assault and suicide. (Tr. 497). He changed her medication. *Id.* CLL failed to show up for appointments in April and June. (Tr. 534-35).

In July 2013, CLL presented to Dr. Wahl for follow-up. (Tr. 533). Upon examination, he noted she was cooperative with a casual and passive appearance and demeanor; a subdued, restricted, and neutral mood and affect; a normal thought process and content; fair insight and poor judgment; and fair attention and concentration. *Id.* Dr. Wahl changed her medications due to negative side effects. He also noted CLL had no recent aggression or suicidal ideation or threats. *Id.*

CLL was admitted to the hospital in September 2013 due to "positive/active suicidal ideations." (Tr. 536-47). She experienced sadness, low energy, lack of interest in daily activities, and displayed a restricted and somewhat blunted affect. *Id.* Her symptoms mostly occurred at school, where she suffered from "constant bullying". *Id.* The admitting doctor noted CLL did not exhibit signs of mania, hypomania, or acute psychosis, and was well-groomed with normal speech and thought process. (Tr. 536-37). CLL's mood soon brightened and she adamantly denied any suicidal or homicidal ideation. (Tr. 537). She was diagnosed with major depressive disorder (recurrent, moderate), and assigned a GAF score of 60[6] upon discharge, three days later. *Id.*

Consultative Examination

K. Roger Johnson, M.Ed., completed a psychological consultative examination in November 2012, following a referral by the Ohio Division of Disability Determination relating to her claim for disability benefits. (Tr. 492-96). He administered the WISC-IV, which resulted in a full scale IQ of 72, 1.9 standard deviations below the mean. (Tr. 495). Mr. Johnson

---

6. *See DSM-IV-TR*, *supra*, note 1.

diagnosed CLL with nocturnal enuresis and borderline intellectual functioning, and assigned a

GAF score of 65.[7] (Tr. 495). She appeared normal, although mildly restless, and was pleasant

and cooperative with a mildly blunted affect. (Tr. 495).

In the domain of Acquiring and Using Information Mr. Johnson opined CLL had the

ability to converse appropriately with adults using descriptive vocabulary and providing

appropriate responses to direct questions. (Tr. 496). He also noted she had the ability to learn and

retain new information in a one-on-one setting. *Id.* In the domain of Attending and Completing

Tasks he opined CLL was able to pay attention and respond to direct questions from an adult in a

one-on-one situation, did not require redirection, and sat quietly. *Id.* She performed some

household chores, watched TV, and maintained a Facebook page. *Id.* In the domain of

Interacting and Relating With Others, Mr. Johnson opined she was capable of being cooperative

during one-on-one interactions with unfamiliar adults, able to sustain dialogue on topics of

interest to her, and participate in conversation initiated by others. *Id.* She did not initiate any

conversation on her own and Mr. Johnson noted Plaintiff did not report any incidents of

disrespect or non-compliance with authority figures. *Id.* In the final domain of Caring for

Herself, Mr. Johnson opined CLL could complete self-care independently and had the ability to

manage acute emotional reactions without prolonged distress. *Id.* He noted she frequently wet

the bed and took her medication with reminders from Plaintiff. *Id.* She also showed occasional

frustration and outbursts when her sister teased her. *Id.*

---

7. A GAF score between 61 and 70 indicates "some mild symptoms" (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV-TR.* at 34.

State Agency Reviewers

In December 2012, state agency reviewing psychologist Caroline Lewin, Ph.D., and pediatrician Rachel Rosenfeld, M.D., both opined CLL's impairments did not meet, medically equal, or functionally equal any listed childhood impairment. (Tr. 95-104). They opined CLL had less than marked limitations in the domain of Acquiring and Using Information; less than marked limitations Attending and Completing tasks; less than marked limitations Interacting and Relating With Others; no limitation Moving About and Manipulation of Objects; less than marked limitations Caring for Herself; and no limitation in health well-being. (Tr. 95-104). On reconsideration, state agency reviewers concurred with those determinations, with the exception that they found a marked limitation in the domain of Acquiring and Using Information. (Tr. 107-16).

Hearing Testimony

CLL and Plaintiff testified at the hearing in July 2013. (Tr. 36-64). CLL was fifteen and had just completed ninth grade. (Tr. 39-40). She testified she received "A's", "B's", one "C", and one "D" in gym class because she did not change into her gym clothes. (Tr. 40-41). She had not received any detentions or suspensions in school and always turned in her assignments on time. (Tr. 41-42). She had friends in her neighborhood, but none at school because she was bullied at school. (Tr. 42-43). She had assistance taking tests because of her difficulty reading and had recently learned to tell time at school. (Tr. 46-48).

After school she would play outside or watch TV. (Tr. 43). She did not have any difficulty with personal hygiene. (Tr. 44). She performed daily household chores, including feeding her dog, but sometimes needed a reminder to do so. *Id.* She reported difficulty getting along with her sister and step-father and was seeing a counselor for behavioral problems, but was

not taking any medication. (Tr. 45-46). She was not feeling sadness and was happy the school

year was over. (Tr. 49-50).

Plaintiff testified she filed the claim on behalf of CLL due to "disability problems,

learning, mainly learning and anxiety." (Tr. 51). Plaintiff testified CLL had lived with her since

birth. *Id.* She testified CLL was irritable, unruly, and tearful when returning home from school.

(Tr. 52). She also stated CLL suffered from depression and once or twice a month "anxiety

attack[s]" in which she would lock herself in the bathroom and hyperventilate. (Tr. 54). Plaintiff

noted CLL failed to bring home her homework assignments, was frequently inattentive, and

often wet the bed at night. (Tr. 57). CLL participated in a behavior modification program for

individuals with ADHD. (Tr. 59-60). Plaintiff stated CLL earned good grades in the beginning of

the year, but they fell by the end of the year. (Tr. 60).

ALJ Decision

On September 20, 2013, following the hearing, the ALJ issued an unfavorable notice of

decision. (Tr. 15-31). The ALJ found CLL had not engaged in substantial gainful activity and

had the following severe impairments: mental health impairments variously diagnosed as a

cognitive impairment/borderline intellectual functioning; ADHD; dysthymic disorder;

generalized anxiety disorder; oppositional defiant disorder; PTSD; adjustment disorder with

anxiety; and parent-child relational difficulties. (Tr. 21). The ALJ determined CLL did not have

an impairment or combination of impairments that met, medically equaled, or functionally

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22).

The ALJ also concluded CL had marked limitation in the domain of Acquiring and Using

Information; less than marked limitation in the domains of Attending and Completing Tasks,

9

Interacting and Relating with Others, and Caring for Self; and no limitation in the domains of Moving About and Manipulating Objects and Health and Physical Well-Being (Tr. 24-31).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). In the case of a claimant under the age of 18, the Commissioner follows a three-step evaluation process – found at 20 C.F.R. § 416.924(a) – to determine if a claimant is disabled:

1.       Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2.       Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which causes no more than minimal functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3.       Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine, under step three of the analysis, whether an impairment or combination of impairments functionally equals a listed impairment, the minor claimant's functioning is assessed in six different functional domains. 20 C.F.R. § 416.926a(b)(1). This approach, called the "whole child" approach, accounts for all the effects of a child's impairments singly and in combination. SSR 09-1P, 2009 WL 396031, at *2. If the impairment results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning, then the impairment is of listing-level severity and therefore functionally equal to the listings. 20 C.F.R. § 416.926a(a).

A "marked" limitation is one that is more than moderate but less than extreme, and interferes "seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). The six functionality domains are: (i) Acquiring and Using Information, (ii) Attending and Completing Tasks, (iii) Interacting and Relating With Others, (iv) Moving About and Manipulating Objects, (v) Caring for Oneself, and (vi) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1).

**DISCUSSION**

Plaintiff asserts the ALJ erred in finding CLL's impairments did not meet or functionally

equal the requirements of Listing 112.05(D), and by improperly relying on the opinions of state

agency physicians. (Doc. 15, at 17-25).

<u>Listing 112.05(D)</u>

A claimant bears the burden of showing she meets or equals a listing impairment. *Her v.*

*Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999). If a claimant meets or equals the

requirements of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §

404.1520(d). In order to determine whether a claimant's impairment meets or is medically

equivalent to a listing, the ALJ may consider all evidence in a claimant's record. §§

404.1520(a)(3), 404.1526(c). In reviewing an ALJ's listing determination, there is no

requirement for "heightened articulation" by the ALJ, as long as the finding is supported by

substantial evidence. *Bledsoe v. Barnhart*, 165 F.App'x 408, 411 (6th Cir. 2006) (citing *Dorton*

*v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1986) (an ALJ's step-three determination is not to be

overturned unless it is legally insufficient)).

Listing 112.05(D) states:

Intellectual Disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

Here, Plaintiff argues the ALJ erred because Listing 112.05(D) does not require a

diagnosis of "mental retardation." (Doc. 15, at 17-18). This argument is not well-taken because

the ALJ does not make the assertion that "mental retardation" is a requirement of 112.05(D). Rather, he appropriately considered that CLL did not have a diagnosis of "mental retardation" as part of his evaluation. (Tr. 22); *see Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 Fed. Appx. 461, 463 (6th Cir. 2014) (finding a lack of a "mental retardation" diagnosis probative of whether an individual's intellectual functioning is "significantly subaverage" as required by Listing 112.05.)

As long as substantial evidence shows CLL does not have "significantly subaverage general intellectual functioning" in addition to, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function", as required by 112.05(D), the ALJ's determination will be affirmed.

After a review of the entire record, the undersigned finds there is substantial evidence in the record which supports the ALJ's determination. Although the record reveals CLL had mental impairments and some limitation of function, there is also significant evidence that supports the ALJ's determination. In making his finding, the ALJ relied heavily on the opinions of the consultative examiner and state agency experts. (Tr. 24). The consultative examiner, Mr. Johnson, found CLL was attentive, cooperative, pleasant, and could sustain dialogue. She also had the ability to perform household chores and independently care for herself. The ALJ noted this opinion was not contradicted by any treating sources. (Tr. 24). The record also reveals improvement of mental health when CLL attended her therapy sessions. (Tr. 443, 500).

On reconsideration, the reviewing state agency reviewers found CLL had a marked limitation in only one domain, Acquiring and Using Information. (Tr. 107-16). The ALJ gave these opinions great weight because the opinions were consistent with that of Mr. Johnson and the record as a whole. (Tr. 24). Furthermore, the ALJ noted the opinion "adequately accounts for

[CLL's] cognitive difficulties, while at the same time acknowledging effectiveness of treatment and medication for her other impairments." (Tr. 24). The ALJ considered a variety of impairments in his analysis, and noted the state agency consultants found CLL's impairments did not meet or medically equal a listing. (Tr. 21-22). The undersigned finds the ALJ's determination supported by substantial evidence in the record.

Alternatively, Plaintiff argues CLL's impairments functionally equal the listing. She argues there is substantial evidence supporting a finding that CLL has marked impairments in two domains.[8] Even if substantial evidence supports a finding contrary to the ALJ's, however, this Court still cannot reverse so long as substantial evidence also supports the conclusion reached by the ALJ. *See Jones*, 336 F.3d at 477.

*Attending and Completing Tasks*

Plaintiff asserts the ALJ erred by finding a less than marked impairment in the domain of Attending and Completing Tasks. (Tr. 26).

This domain focuses on a child's ability to focus and maintain attention; her ability to begin, carry through, and finish activities at a reasonable pace; and the ease at which she changes activities. 20 C.F.R. § 416.926a(h). For adolescent-aged children, 20 § C.F.R. 416.926a(h)(2)(v) states:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended

---

8. Plaintiff actually argues the ALJ erred in finding CLL did not have a marked impairment in three domains, including Acquiring and Using Information. (Doc. 15, at 17). Because, however, the ALJ did in fact find CLL had a marked impairment in the domain of Acquiring and Using Information, the undersigned only addresses the other two domains of Attending and Completing Tasks and Interacting and Relating with Others. (Tr. 23).

14

periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

Here, the ALJ relied on an IEP which revealed medication had been effective and CLL was doing better and had "no problems." (Tr. 443). An evaluation report dated August 2012, reveals CLL had "great organizational skills" and the ability to follow directions after being told only one time. (Tr. 26, 289, 298).

In a September 2012, teacher questionnaire, Ms. Elson noted CLL was "never a disruption in class." (Tr. 327). While Ms. Elson opined CLL had "serious" and "very serious" problems in some areas, she also found CLL had "no" or "slight" problems with paying attention when spoken to directly, waiting to take turns, changing from one activity to another without being disruptive, organizing things or school materials, and working without distracting herself or others. (Tr. 27, 327).

The ALJ also relied on Ms. Elson's opinion dated April 2013, in which she assessed CLL with slightly greater limitations, but still found she had "no" or "slight" limitations with refocusing to task, waiting to take turns, changing activities without being disruptive, and working without distracting herself or others. (Tr. 354). Ms. Elson noted CLL had missed 36 days of school that year. (Tr. 352). The ALJ reasonably opined such significant absences alone could affect her academic performance. (Tr. 23, 366-67).

Consultative examiner Johnson noted CLL displayed adequate attention, concentration, and alertness; and did not require redirection during the examination. (Tr. 22, 495-96). She responded to direct questions and sat quietly in her seat without interrupting during her mother's interview. (Tr. 496). Additionally, after reviewing the record, the state agency reviewers found less than marked limitation in this domain. (Tr. 24, 100-01, 112).

In his written opinion, the ALJ noted that at the administrative hearing CLL responded appropriately to questions and did not appear to have difficulty maintaining attention or understanding questions. (Tr. 27). There is substantial evidence that supports the ALJ's finding of less than marked limitation in this domain.

*Interacting and Relating With Others*

Plaintiff also asserts error in the ALJ's finding of a less than marked impairment in the domain of Interacting and Relating With Others. This domain focuses on an individual's ability to initiate and sustain emotional connections with others; develop and use the language of her community; cooperate with others; comply with rules; respond to criticism; and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). Specifically, 20 C.F.R. § 416.926a(i)(2)(v) speaks to adolescents:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stores, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

Here, in making his determination that CLL had a less than marked limitation in this domain, the ALJ relied on evidence in the record noting CLL's friendly and pleasant personality, and although shy at first, an ability to initiate conversations. (Tr. 28, 295, 297-98). Mr. Johnson noted CLL was cooperative and compliant while appearing only mildly distressed with a somewhat blunted affect. (Tr. 493-96). CLL maintained normal eye contact and participated in daily activities including using Facebook. *Id.*

In a teacher questionnaire, Ms. Elson noted she had not observed any negative mood symptoms. (Tr. 331). She later noted CLL did not exhibit any defiant behavior at school and appeared extremely shy. (Tr. 335).

The ALJ appropriately gave great weight to the state agency reviewers' finding of a less than marked limitation in this domain. (Tr. 24). At the administrative hearing, CLL appeared shy, but appropriately responded to questions and was pleasant and cooperative. (Tr. 27). There is substantial evidence in the record supporting the ALJ's finding of a less than marked limitation in this domain as well.

State Agency Consultants

Plaintiff next argues the ALJ erred in giving great weight to the opinions of the state agency reviewers. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(c), (d); SSR 96–6p, 1996 WL 374180, at *2–3.

Here, the ALJ assigned great weight to the opinions of the non-examining state agency reviewers because these opinions were consistent with evidence in the record. *Hoskins v. Comm'r of Soc. Sec*., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by substantial evidence.").

The ALJ also afforded significant weight to the opinion of Mr. Johnson, the consultative examiner, who examined CLL. "Consequently, opinions of one-time examining physicians and

17

record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp. 2d at 823-24.

Here, there is no contradictory finding from a treating source[9] and the state agency reviewer's opinions are supported by substantial evidence in the record, including the opinion of the consultative examiner.

### CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision supported by substantial evidence. Therefore, the Commissioner's decision denying benefits is AFFIRMED.

IT IS SO ORDERED.

s/James R. Knepp II
United States Magistrate Judge

---

9. In her Reply brief, Plaintiff asserts, for the first time, that the opinion of CLL's teacher is akin to the opinion of a treating source. However, this argument was not raised in her merits brief so as to fairly apprise the Commissioner of such. Accordingly, it is waived. *Bender v. Comm'r of Soc. Sec.*, 2012 WL 3913094, at *8 (N.D. Ohio).